# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SHAD A. HEMBREE, | No. ED CV 06-497-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff filed this action on May 11, 2006, seeking review of the Commissioner's denial of his applications for Supplemental Security Income payments and Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 6, 2006, and June 7, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on December 21, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## **BACKGROUND**

Plaintiff was born on December 1, 1974. [Administrative Record ("AR") at 73.] He has an eleventh grade education and past work experience as a mason, mechanic, carpenter and cashier. [AR at 85-86, 88-89, 123-28.]

On February 4, 2004, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he had been unable to work since March 15, 2002, due to depression with psychotic episodes. [AR at 73-75, 84, 249-50.] After a denial of his applications at the initial level and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on October 28, 2005, at which time plaintiff appeared with counsel and testified on his own behalf. A vocational expert and a medical expert also testified. [AR at 259-81.] On January 27, 2006, the ALJ determined that plaintiff was not disabled. [AR at 14-18.] When the Appeals Council denied review on March 17, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 6-8.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.[1] [AR at 16.] At step two, the ALJ concluded that plaintiff had the "severe" impairments of drug induced psychosis and substance abuse. [Id.] At step three, the ALJ determined that plaintiff's impairments did not meet or equal any impairment in the Listing.[2] [Id.] The ALJ further opined that plaintiff retained the residual functional capacity ("RFC")[3] to perform simple repetitive, object oriented work, "with no responsibility for safety operations or jobs requiring hypervigilance. He can perform ordinary, commonplace interactions but no emotionally charged interactions." [AR at 16.] At step four, the ALJ concluded that plaintiff was capable of performing his past relevant work. [AR at 18.] Accordingly, the ALJ determined that plaintiff was not disabled. [AR at 14-18.]

/

/

/

---

[1] The ALJ also determined that plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits, and remained insured through December 31, 2006. [AR at 14.]

[2] The ALJ further concluded that "[w]ith continued substance abuse [plaintiff] would meet the listing for the "B" criteria. Without substance abuse [plaintiff] would not meet the listing and the "B" criteria would be no limitations in activities of daily living, mild to moderate limitations in social functioning, and moderate limitations in concentration, persistence or pace. There was one documented episode of decompensation." [AR at 16.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) did not properly consider all of the medical evidence; and (2) failed to properly evaluate his claim as it relates to his history of drug addiction and/or alcoholism. Joint Stipulation ("Joint Stip.") at 3. The Court agrees that the ALJ failed to properly evaluate the evidence, and remands the matter for further proceedings.

In 1996, Congress amended the Social Security Act to preclude entitlement to disability benefits when drug addiction or alcoholism is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); Pub.L.104-121, §§ 105(a)-(b). The "key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability" is whether an individual would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). In other words, if an ALJ determines that a claimant is disabled under the five-step inquiry contained in 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f), and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed to determine if the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." Bustamante v. Massanari, 262 F.3d 949, 953-55 (9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1535, 416.935). If the claimant would still be disabled even if he stopped drinking or using drugs, the substance abuse is not a contributing factor material to the disability. If, on the other hand, the claimant would no longer be disabled if he stopped drinking or using drugs, the drug or alcohol addiction is a contributing factor material to the finding of disability, and the claimant is not entitled to benefits. See Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir.1998) ("Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too.").

In Bustamante, the court concluded that the ALJ erred in determining that the plaintiff's mental impairments are the "product and consequence" of his alcohol abuse prior to making a determination under the five-step inquiry that he was disabled. "[A]n ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be

disabled under the five-step inquiry. . . If, and only if, the ALJ found that [the claimant] was disabled under the five-step inquiry, should the ALJ have evaluated whether [the claimant] would still be disabled if he stopped using alcohol." Id. at 955. See also Lindsay v. Barnhart, 370 F.Supp.2d 1036, 1044 (C.D.Cal. 2005) ("it is reversible error for an ALJ to attempt to separate out the impact of a claimant's alcohol abuse before determining whether the claimant is disabled"; finding that the ALJ segregated out the claimant's alcoholism from his remaining symptoms at step three, and failed to consider whether the claimant was disabled without removing his alcoholism from the equation).

Plaintiff contends that the ALJ's analysis regarding his severe impairments and the effects if any of a history of substance abuse on those impairments was defective and did not comply with the regulations of the Social Security Administration pertaining to such issues. Joint Stip. at 7-10. Defendant concedes that the ALJ did not follow "[the] precise analysis" set forth in Bustamante, but argues that the ALJ's rationale "satisfies the intent of the regulation and case law." Joint Stip. at 11.

In reaching her decision, the ALJ relied on the testimony of the medical expert, Dr. Joseph Malancharuvil, who testified that plaintiff has a severe impairment from drug induced psychosis, that substance abuse is the primary source of his problem, and that his symptoms seem to disappear when he has complied with medication. Dr. Malancharuvil also referred to discrepancies between plaintiff's testimony at the hearing and the medical record regarding substance abuse -- i.e., evidence that plaintiff used amphetamines in March, 2003, although he denied doing so in his testimony -- and concluded that plaintiff's "presentation" was atypical of an individual with the type of disabling condition alleged. [AR at 17, 274-75.]

The problem presented when the Bustamante process is not strictly followed is evident in this case. Instead of a clear-cut statement that plaintiff is or is not disabled at step five while factoring in any substance abuse, the ALJ first determined that plaintiff does not meet or equal a listed impairment, but then concludes that plaintiff "[w]ith continued substance abuse" meets the listing for the "B" criteria. [AR at 16.] This could indicate disability. But the ALJ also determined that the degree of plaintiff's impairment is not supported by the objective findings or treatment

notes, and that he can perform his past relevant work, i.e., plaintiff is not currently disabled even with substance abuse. [AR at 18.] From this, it is entirely unclear if the ALJ concluded that plaintiff, at the time of the decision, and assuming the use of drugs, met the "B" criteria of the Listings, and was thus considered disabled (in which case, and if alcoholism or drug addiction is a contributing factor, then benefits would not be awarded), or if the evidence does not support a finding of disability even with substance abuse. Further, while evidence may exist that alcoholism or drug addiction could have contributed to plaintiff's condition at some point, it is not obvious that it contributed to his condition throughout the entire period at issue. Indeed, progress notes from early 2004 through July, 2005, repeatedly indicate that plaintiff denied the use of alcohol or street drugs and was "clean and sober." See, e.g., AR at 231, 234, 237, 239, 240, 243, 245. The August 13, 2003, drug screen that returned negative results as to all drugs would support plaintiff's claims in that time frame.[4] [AR at 188.] While defendant argues that the ALJ "effectively found" that plaintiff would be considered disabled with continued substance abuse, but not disabled if he abstained from such use, the evidence cited by defendant in support of this position is a reference to use of amphetamines 2-1/2 years prior to the hearing, and alcohol and marijuana consumption 3-1/2 years prior to the hearing. Joint Stip. at 11. In addition, plaintiff apparently was never sent for a consultative evaluation of his mental impairments, and his treating psychologists apparently have not actually rendered any opinions on the actual functional limitations resulting from his impairment. The Court therefore finds that remand is required to comply with the Bustamante inquiry. It may be that further development of the record is necessary to determine if plaintiff is using or was using drugs and/or alcohol during the relevant period, and whether plaintiff's disability would remain if he stopped using drugs and/or alcohol.

---

[4] However, the Court notes that there appear to be additional references that plaintiff used "speed" and marijuana in January, 2004. [AR at 138-39.] The ALJ does not appear to have relied on this reference, and defendant does not refer to it in the Joint Stipulation.

7

Plaintiff also alleges that the ALJ failed to properly consider certain evidence within the record, specifically, a number of Global Assessment of Functioning[5] ("GAF") scores assigned by plaintiff's treating physicians. Joint Stip. at 3.

The evidence shows that on April 26, 2002, plaintiff was assessed with a GAF score of 38.[6] He was diagnosed with psychotic disorder, not otherwise specified, and it was indicated that he was dependent on cannabis. [AR at 182.] Plaintiff notes that a few weeks later, he reported that he was not doing well, was having side effects from his medication, and was feeling paranoid. [AR at 174.] In March, 2003, he was diagnosed with a psychotic disorder, not otherwise specified, depressive disorder, not otherwise specified, a history of polysubstance abuse, and was assigned a current GAF score of 40, and a score of 55[7] as the highest in the prior year. [AR at 165.] In January, 2004, plaintiff was assessed a current GAF score of 45,[8] and again a score of 55 as the highest during the past year. [AR at 138.]

While the GAF scores of 38 and up -- without more -- may not be determinative of the issue of disability, especially where there is evidence that plaintiff was using amphetamines and/or alcohol at the time these scores were assessed, the Court is aware of no authority asserting that GAF scores and their implications -- especially scores from treating sources -- may be ignored and rejected without comment, as was done here. Plaintiff's scores indicate at least a moderate impairment, and possibly a major impairment, in social and occupational functioning. Even if it is

---

[5] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000).

[6] A GAF score of 31-40 denotes "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . ." See DSM-IV, at 34.

[7] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See DSM-IV, at 34.

[8] A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM-IV, at 34.

not directly translatable into Social Security terminology, the scores may be probative of plaintiff's condition. See, e.g., Escardille v. Barnhart, 2003 WL 21499999, *5-6 (E.D. Pa. June 24, 2003) (remanding based in part on ALJ's failure to address a GAF score of 50 "or its meaning regarding plaintiff's ability to maintain employment."). This evidence should be considered and addressed on remand.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to conduct a proper analysis of plaintiff's impairment under Bustamante. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 31, 2007

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE